# OCTOBER TERM, 1858.

## T. M. SMITH, use, &c. v. JNO. W. & E. A. HENRY.

1. HUSBAND AND WIFE: CONVEYANCES TO WIFE'S SEPARATE USE: RULE AS TO INTENTION TO EXCLUDE HUSBAND.—No prescribed form of words is necessary to create a separate estate in a *feme covert;* it is sufficient, if the intention of the donor or testator to exclude the marital rights of the husband, clearly and manifestly appears.

2. SAME: SAME.—The marital rights of the husband, by the common law, are favored, and in dispositions of property for the benefit of married women, his rights will not be considered as interfered with, unless there be a clear exclusion of them.

3. SAME: SAME: EFFECT OF APPOINTING TRUSTEE.—By the law of Alabama, which differs, in this respect, from the general doctrine, the intervention of trustees, in dispositions of property for the benefit of married women, furnishes no evidence of any intention on the part of the grantor, or testator, to exclude the marital rights of the husband.

4. SAME: CASE IN JUDGMENT.—The father conveyed a slave to trustees, for the benefit of his married daughter, subject to the following trusts, viz.: "That the said trustees, or the survivor of them, shall permit my daughter, N. H., wife of J. H., to have and enjoy the use and possession of the said slave and her future increase, for and during the natural life of the said N. H. After her death, that the said trustees, or the survivor, shall and will convey the same unto the heirs of N. H." The slave was levied on, to procure satisfaction of a judgment rendered against the husband; and on the trial of the right of property, it was held, that by the common law, and also the law of Alabama, a separate estate was secured by the deed to the wife.

5. SAME: EFFECT OF WORDS "HAVE AND ENJOY THE USE AND POSSESSION."— The use of the phrase, "that the wife shall have and enjoy the use and possession" of the property conveyed to trustees for her benefit, is a sufficient indication of an intention by the grantor, to exclude the marital rights of the husband. See *Tyrrell* v. *Hope,* 2 Atkyns, 557.

ERROR to the Circuit Court of Carroll county. Hon. S. S. Wright sitting as special judge.

A statement of the case will be found in the opinion of the court.

*J. Z. George,* for plaintiff in error.

I. Upon an examination of the decisions of the Supreme Court of Alabama, very little difficulty will be found in arriving at a satisfactory conclusion on the first point. It will be seen, that that court enforces with the utmost rigor, as against the wife, the rule, that in gifts or bequests to the wife, the marital rights of the husband shall not be excluded, unless the intention to do so manifestly and clearly appears.

In *Hale* v. *Scott,* 14 Ala. R. 803, the Supreme Court of Alabama, after reviewing all the cases decided by that court, extracts the following principles:—

1. That while the owner of property may so convey or bequeath it, as to create a separate estate in a *feme covert,* yet such claim on the part of a married woman, being against common right, it is necessary that the instrument under which the claim is made, must clearly speak the intention of the donor to exclude the husband, otherwise he shall take the property.

2. That, in the absence of such declared intention to exclude the husband, the intervention of a trustee will not have the effect of vesting in the wife a separate use. But if the wife, by the terms of the gift, be entitled to the usufruct of the property, and the same comes to the possession of the husband, the wife's interest, whether for years, for life, or in fee, may be sold under execution at law against him.

3. In cases where the instrument limiting the estate contains directions, in respect to its enjoyment, use, or management, wholly incompatible with any dominion of the husband over it, his creditors cannot reach it under execution at law.

In *Lamb* v. *Wragg & Stewart,* 8 Porter, 76, Anno 1839, the father made a deed to the son-in-law, in trust for the daughter. The operative words are, "bargain, sell, and deliver unto J. J. L., in trust for my said daughter, for and during her natural life, four slaves, &c., and after the death of the said (daughter), to such child and children of the said (daughter and son-in-law) as may be living."

The court say: "As a general rule, where property is given or bequeathed to a married woman, without any qualification of the manner in which it is to be possessed or enjoyed, that it will vest, subject to the ordinary legal and marital rights of the husband. But if it appear from the deed, &c., that it was the intention of the donor, &c., that the wife should have an estate therein to her own separate use and disposal, such intention shall take effect, if it be fairly and clearly expressed." See page 78. On page 83, the court say: "There is not the slightest indication of an intention in either of the deeds to exclude the marital rights of the husband. The interposition of a trustee, or the fact of Mrs. L.'s being married at the time the gifts were made, could make no difference." See also *Price* v. *Price*, 5 Ala. (N. S.) 578.

In the case of *Inge* v. *Forrester*, 6 Ala. R. N. S. 418, the father, by will, made the following disposition of certain property: "It is my will and desire, that the above-named men (Sol. Williams and John A. Williams) should have full power and control over all the following property, to be used and managed at their discretion, for the mutual use, benefit, and interest of my daughter, Rebecca Inge, and her surviving children; and as they come of age, or marry, that the following negroes be equally divided among them."

The court say, p. 421, "Although this is an equitable estate, in the *cestui que trust*, there is nothing in the terms used which warrants us to construe Mrs. Inge's portion as settled upon her for her sole and separate use." The rule is, that to create an estate for the separate use of a *feme sole*, that intention must clearly appear upon the face of the instrument. Citing, Clancy on Rights, 262 to 270; *Deen* v. *Bank of Mobile*, 2 Ala. R. 152.

In *O'Neill* v. *Teague*, 8 Ala. R. 345, Anno 1845, the father made a deed to trustees, "for the benefit of Eleanor S., who, it is provided, 'with her husband, the said James C., are to retain possession of said negroes, with their increase, during coverture, and during the natural life of said Eleanor.' And should said Eleanor die without issue, said negroes to revert back to me, or my lawful heirs, hereby conveying the legal interest to the trustees aforesaid, and the possessory interest to the said Eleanor, and her heirs forever," &c. The court held, see p. 381, that no separate

estate was created in Mrs. O'Hara; that her husband had an estate for life, which was subject to seizure and sale under execution at law.

In *Gillespie* v. *Burleson*, 28 Ala. 564, Anno 1856, the court held that the words, "I intend to give you some property (referring to the slaves in controversy), but not subject to your husband's debts," are not sufficient alone to exclude the marital rights of the husband. See also, on this point, *Lenoir* v. *Rainey*, 15 Ala. R. 667; *Moss* v. *McCall*, 12 Ala. R. 630; *Pollard* v. *Merrill*, 15 Ala. R. 170.

But it is insisted that the term "enjoy," indicates an intention to exclude the husband; and *Tyrrell* v. *Hope*, 2 Atk. R. 558, is cited to sustain that position. But the court will observe, that the Master of the Rolls decided that case upon the strength of the word "receive;" "for," says he, "to what end shall she receive it, if it be the property of the husband the next moment." He then adds, it is true, that "the word enjoy too, is very strong to imply a separate estate." The court will also observe, that the note executed by the husband, which was construed by the Master of the Rolls, was made to correct an antenuptial settlement, which had been prepared in pursuance of articles; and the settlement not conforming to the articles—which provided that the property should be secured to her separate use — she refused to sign it unless it was corrected, and this was done by the note above referred to.

The case of *Sale* v. *Sanders*, 24 Miss. R. 24, decided by this court upon an Alabama will, is an express authority, that the word "enjoy," will not exclude the marital rights of the husband. See p. 34.

II. The husband's interest, whether for life, or years, or in fee, legal or equitable, is subject to seizure and sale under execution at law against him. See *Sale* v. *Sanders*, 24 Miss. R. 24; *O'Neill* v. *Teague*, 8 Ala. R. 345; *Carlton & Co.* v. *Banks*, 7 Ib. 32; *Hale* v. *Stone*, 14 Ib. 803, and the cases above cited.

III. The husband has a fee simple interest in the slaves. *Lenoir* v. *Rainey*, 15 Ala. R. 667, and cases there cited.

*Somerville* and *Russell* for defendant in error.

The plaintiffs obtained a judgment in the Circuit Court of Car-

roll county, against one James H. Henry. An execution was issued thereon, and levied on a slave, "Mary," as the property of James H. Henry.

The appellees asserted their claim to the slaves, and instituted proceedings for a trial of the right of property. The cause was submitted on an agreed state of facts.

I. The first question arising on the facts, is whether a separate estate was created in Mrs. Henry by the deed?

The deed was executed in the State of Alabama, and its construction will be determined by the laws of that State.

No particular form of words is necessary, to create a separate estate; it is sufficient, if the intention of the donor or testator clearly appears, to exclude the marital rights. Leading Cases in Equity, vol. 1, p. 412; Clancy on Rights of Married Women, 262.

The earliest cases on this subject went so far as to declare, that the appointment of a trustee, in the conveyance of property to a *feme covert*, was conclusive evidence, of itself, that a separate estate was intended to be created. *Darley* v. *Darley*, 3 Atkyns, 399.

The modern decisions, however, have modified the rigor of this rule somewhat, but the intervention of a trustee is still evidence of an intention to confer a separate estate. Fonblanque's Equity.

There is nothing to be gleaned from the decisions in Alabama which will contravene the general principles above laid down.

In the case of *Lamb, Trustee,* v. *Wragg & Stewart,* 8 Porter's R. 82, the court says, "Much stronger terms are required, to indicate the intention of a donor or testator to continue a distinct estate in an unmarried woman, after she shall come under the protection and control of the husband, than in the case of a gift or bequest to a married woman."

The deed, in the present case, after conveying to the trustees the fee in the slaves, recites:—

"That the said trustees, or the survivors of them, shall permit my daughter, Nancy Henry, wife of James Henry, to have and enjoy the use and possession of the said slave Mary, and her future increase, for and during the natural life of the said Nancy; and after the death of the said Nancy, the said trustees, or the survivor

of them, shall and will carry unto the heirs of the said Nancy the said slave Mary, and her future increase."

No case can be found, in the Alabama Reports, where the courts of that State have been called upon to construe a deed, similar in its terms to this. The attention of the court is invited to the following cases, decided in that State : —

In *Fellows* v. *Tann*, 9 Ala. R. 999, "A father, by deed, gave to his daughter, and ' the heirs of her body,' a female slave, to be under her control and employment, in the most profitable way, for the use and support of herself and her heirs during their lives, and after her death to be divided among her heirs :" it was held, that the deed invested the daughter and her children with interests, which the creditors of the husband could not divest, as far as the children were concerned ; that, whether the daughter had a separate estate in the property, or not, it was not subject to levy and sale by execution against her husband ; and that if he should have any interest, in virtue of his marital rights, his creditors must resort to a court of equity.

A deed conveying property to a trustee, for the "sole use, benefit, and behoof of a married woman, and her children," vests the beneficial estate in them, and none in her husband. *Anderson* v. *Brooks*, 11 Ala. R. 954.

So does a deed, to a married woman and her heirs, "to have and to hold the slaves, to and for her use, benefit, and right, and of the heirs aforesaid, without let, hindrance, or molestation whatever." *Newman* v. *James*, 12 Ala. R. 29.

After a diligent examination of all the adjudicated cases, that which most nearly resembles the present, in the terms employed, is the leading case of *Tyrrel* v. *Hope*, 2 Atkyns, 558. The conveyance there was to a *feme covert*, that "she should enjoy and receive the issues and profits of a moiety of the estate."

By the Master of the Rolls, "The word enjoy, is very strong to imply a separate use to the wife."

In the case of *Sale* v. *Sanders*, 24 Miss. R. 25, the word enjoy is used, but in that case the bequest was a joint one to the husband and wife, and the marital rights were determined not to be excluded.

The intention of the donor, in this case, to make a separate provision for his daughter, is very apparent. It is evidenced, first, by

the appointment of a trustee; secondly, by the gift of the 'use to the wife alone; thirdly, by the direction that the trustees should "permit" his daughter "to have and enjoy" the use and possession of the slave,—language which implies that they were still to reserve a control, and exercise a supervisory power over the subject-matter of the gift, thus conferred in terms, exclusive, and incompatible with the dominion of the husband.

II. The second question arising is, what is the estate conferred on Mrs. Henry by this deed? Is it a life. estate, or is it a fee simple?

1. The sound rule of construction, both of deeds and wills, is, that you must first find the intention, and then inquire whether it is consistent with the rules of law; if it is inconsistent with the rules of law, it must fail; but if there be no rule of law to defeat such limitation, so considered according to the intention, that intention shall prevail. This doctrine is acknowledged in *Crone* v. *Odell*, 1 Ball & B. 449; *Minshell* v. *Minshell*, 1 Atkyns, 411.

2. In every case of a gift to a man's heirs, the intention is to give, not to the man himself, but to the persons who shall be his heirs; and it is only by virtue of a rigid rule of law,—as when it happens to fall within the rule in Shelley's case,—that the intention is disappointed.

3. But it is insisted, by appellant's. counsel, that the remainder in this case, limited to the heirs of Mrs. Henry, falls within the rule of Shelley's case. We deny the correctness of this position.

" If the trust is executory, the intent and meaning is to be pursued, and the rule in Shelley's case will not be followed." Fonblanque's Eq. 407 (top paging), note S.

"Executory trusts are properly those, where something remains to be done to complete the intention of the parties, and their act is not final." 2 Story's Eq. Jurisprudence, 316, note 1.

Where there is something to be done by the trustees, the estate must remain in them, to answer the purposes of the trust. 1 Spence's Eq. Jurisdiction, 356; 2 Story's Eq. Jurisprudence, 974, note 2, and cases there cited.

*Wood* v. *Burnham*, 6 Paige, 517, is a case analogous to the present, and Chancellor Walworth, after reviewing the whole doctrine of the rule in Shelley's case, decides that it does not

apply to an executory trust,—such as the present one,—and the attention of the court is especially invited to that decision.

III. The last question presented, is, whether, conceding that a separate estate has not been secured to Mrs. Henry, and that James Henry's marital rights have attached, it is an estate subject to an execution at law ?

1. The interest acquired under the deed was purely equitable, and could only be enforced in a court of chancery.

The legal title still remains in the trustees, for the purpose of enabling them to execute the trusts imposed upon them.

The case of *Presley* v. *Rodgers*, 24 Miss. R. 521, is, in almost every respect, similar to this.

Judge Yerger there says : "The trust estate is not, therefore, a naked, dry, legal title in the trustee, in which the sole beneficial interest is in the debtor. It is not a bare and simple trust, not complicated in its nature, but is a trust in which the rights and interests of others are mixed up with the title." Again he says ; "A court of equity is the only forum in which full and equal justice can, be done to all parties, and in which the rights of the remaindermen can be fully and effectually protected."

The cases of *Boarman* v. *Catlett*, 13 S. & M. 151, and *Wolfe* v. *Dowell*, Ib. 103, also decide that the statute of 1822 (Hutch. Code, 610, sec. 29) was not intended to operate on trusts of this character, if it were necessary to cite additional authorities, but the case of *Presley* v. *Rodgers*, "running on all fours," with the case at bar, is deemed conclusive on this point, and demonstrates that there was no error in the judgment of the court below.

The court will observe, that, by the agreement in the record, all objections to the character of the parties, claiming, or want of interest in them, are waived.

SMITH, C. J., delivered the opinion of the court.

This was a trial of the right of property, in the Circuit Court of Carroll. The plaintiff in error having recovered a judgment against one Henry, caused the execution, issuing thereon, to be levied upon a certain slave as the property of the said Henry, which was claimed by the party replevying, under a deed, by which the slave was conveyed, in trust to certain persons, for the use and benefit of Mrs.

Nancy Henry.   Mrs. Henry was the wife of the defendant in the execution.   The cause was submitted to the court upon an agreed state of facts, and the issue was determined adversely to the plaintiff in the execution; whereupon he prosecuted this writ of error.

The trust-deed above referred to was executed in Alabama, on the 3d day of August, 1835.   The rights of the parties, arising under the deed are, hence, unaffected by the late statute of that State, in regard to the rights of married women.   The questions in the case arise, exclusively, upon the construction of the deed, and are, of course, to be determined with reference to the laws of that State as they existed at the date of its execution.

The clause of the deed, which alone it is material to notice, is as follows, to wit: " That the said trustees, or the survivor of them, shall permit my daughter, Nancy Henry, wife of James H. Henry, to *have* and *enjoy* the *use* and *possession* of the said slave, Mary, and her future increase, for and during the natural life of the said Nancy; and after the death of the said Nancy, that the said trustees, or the survivor of them, shall and will convey unto the heirs of the said Nancy, the said slave Mary, and her future increase."

The general question before the court was, whether the slave, levied upon, was subject to seizure and sale under execution at law.   The determination of that question, necessarily depended upon the nature and character of the interest or estate which, under the clause of the deed above recited, vested in Mrs. Henry.   If the interest conveyed by the deed, was the separate estate of Mrs. Henry, from which the marital rights of her husband were excluded, there can be no question, as the case is presented on the record, that the judgment was correct.   Our first inquiry must, therefore, be directed to that point.

No prescribed form of words is essential to create a separate estate in a *feme covert ;* it is altogether sufficient if the intention of the donor, grantor, or testator clearly and manifestly appears to exclude the marital rights of the husband.   But while this principle is distinctly recognized, the courts of Alabama, upon a principle equally well recognized, favor the marital rights of the husband, and will not, in the dispositions of property for the benefit of married women, consider them as interfered with, unless there is a clear exclusion of the interest or control of the husband.   And,

differing from the general doctrine on the subject, they hold, that the intervention of trustees in dispositions of property for the benefit of *femes covert*, is of itself no evidence to confer a separate estate. But a distinction is taken between a gift or bequest to a married woman, and a gift or bequest to one unmarried. Much stronger terms are required to indicate an intention, in the donor or testator, in the latter case, to continue a separate estate after she shall have come under the protection and control of a husband, than in the case of a gift or bequest to a married woman. *Lamb* v. *Wragg & Stewart*, 8 Porter, 73; *Hale et al.* v. *Stone*, 14 Ala. R. 803.

In the case last cited, after a careful review of the cases on the subject previously decided by the Supreme Court of Alabama, it was laid down that the mere intervention of a trustee, in the absence of a clear intention to exclude the husband, will not have the effect to put in the wife a separate use. But if she, by the terms of the gift, be entitled to the usufruct in the property, and the same comes into the possession of the husband, the wife's interest, whether for years, for life, or in fee, may be sold under execution at law against him. In that case, referring to the case of *Kennerly & Smith* ads. *Cook*, reported 12 Ala. R. 42, the court say, that it " is conclusive to show that the mere naked legal title, so outstanding in the trustee to preserve the remainder, gives him no power over the possessory interest in the slaves; and that such interest vests in the donee for life, who is entitled to the use. The trustee has nothing further to do with them than to convey, at the appointed time, the legal title to those entitled to the remainder. The husband is found in the actual possession of them, which he has had for many years; and, in our judgment, the plaintiffs have a clear right to levy upon, and use, the interest of the wife which vested in him."

It seems, hence, to follow, that the legal title subsisting in Fountain and Hogan, the trustees in the deed before us, to preserve the remainder limited to the heirs of Mrs. Henry, gave them no power over the possessory interest which vested in her. As to her, the trust was executed; the trustees had nothing further to do with the slave, or her future increase, than to convey, upon her death, the legal title to her heirs. It remains, then, to be ascer-

tained, giving no weight to the fact that trustees were interposed, whether or not there is anything upon the face of the deed, which clearly manifests an intention in the donor to confer upon Mrs. Henry a separate estate.

If Mrs. Henry, at the date of the gift, had been a *feme sole*, we apprehend no question could arise ; as, in our opinion, accòrding to all of the cases in Alabama, the terms of the gift would not have continued a separate estate in her, after she should come under the protection and control of a husband. But she was *covert* when the deed was executed, and hence slighter terms were requisite, to indicate an intention in the donor to vest the possession and usufruct of the property in her, as her separate estate. *Lamb & Wragg* v. *Stewart,* 8 Porter, 73. And as no particular words, or form of expression, is necessary to the creating of separate estate in a married woman, we must look to the plain and certain intention of the donor, as expressed in the instrument.

The words, "separate use," or "separate estate," are not contained in the deed ; but, nevertheless, we cannot doubt that it was the intention of her father to give the slave in question to Mrs. Henry as separate property, from which the marital rights of her husband were excluded. The words, "to have and enjoy the use and possession of the said slave," mean nothing, if they do not import that it was the donor's intention to exclude the rights of the husband. For if such were not clearly his intention, why provide that the donee should have the possession and enjoy the use of the property, if it was not his design to exclude the husband's control ? Why insert such a provision in the deed, if the legal effect of it was, instantly upon the receipt of the property by the donee, to vest the possession and usufruct absolutely in the husband ? The right to have the possession, and enjoy the use, given to Mrs. Henry, clearly exclude the authority of her husband, and seem to indicate as certainly, the intention to confer separate estate, as if the property had been given for her livelihood, which has been always held sufficient to show, that it was the donor's intention that the wife should be entitled to the use, as her sole and separate estate.

This construction of the deed, is not in conflict with the decision in any case to which we have been cited, or which has come under

our observation, decided by the courts of Alabama; and it is sustained by authority, as well as reason.

In *Tyrrell* v. *Hope,* 2 Atkyns, 557, an agreement or promise, made before marriage, by the husband to his wife, and which was held to constitute part of the marriage agreement, previously entered into by the parties, stipulated, "that the wife should enjoy and receive, the issue and profits of one moiety of" a certain estate, then in the possession of the wife's mother, after the decease of the mother, was held to vest in the wife a separate use in the one moiety. The words, " enjoy and receive," were considered equivalent to an express declaration, that the "issue and profits" of the one moiety, should be the separate estate of the wife. The word, "enjoy," was considered, very strongly to imply a separate use in the wife; and the whole clause was held to be susceptible of no other construction, than that it was to be for her separate use : for to what end, said the Master of the Rolls, was the wife "to receive it, if it is the property of the husband the next moment ?"

In the deed under consideration, the property was conveyed to trustees. That fact, however, as we have seen, would have little or no weight in determining the character of the interest which Mrs. Henry acquired; but it must be admitted, that the stipulation, by which she was "to have and enjoy the use and possession of the slave, and her future increase," is quite as comprehensive, and as clearly indicative of an intention to confer separate estate, as a provision would be, by which she would have been entitled "to receive and enjoy the issue and profits" of the property conveyed to the trustees.

As we hold that the use of the property in controversy was vested in Mrs. Henry, as her separate estate, it becomes unnecessary to ascertain whether her interest in the slave, and her future increase, was an estate for life, or in fee.

Judgment affirmed.